CITIZENS BANKING CO. et al. v.
MONTICELLO STATE BANK.

Civil Action No. 55.

District Court, N. D. Iowa, Cedar Rapids Division.

April 20, 1943.

Carl H. Lambach, of Davenport, Iowa and R. S. Milner, of Cedar Rapids, Iowa, for defendant.

SCOTT, District Judge.

This is a suit brought by twelve banking corporations, seven are Ohio banks, two are Michigan banks, and three are Minnesota banks, against the Monticello State Bank of Monticello, Iowa, an Iowa corporation. Jurisdiction is based upon diversity of citizenship and an amount in controversy alleged to be in excess of $3,000, exclusive of interest and costs. The requisite diversity of citizenship appears. The action is in form a class suit. The relief sought is an accounting by the defendant of trust securities received by it under an alleged trust agreement between it and Commercial Investment Corporation, of Davenport, Iowa, an Illinois corporation; the appointment of some proper person to receive and collect moneys due the trust. A money judgment is also prayed against the defendant for the recovery of $235,100, with interest. The case comes before the Court on a motion to dismiss, challenging jurisdiction both of person and subject matter, but stating no particular reasons, and also alleging that the complaint fails to state a claim upon which relief can be granted.

The complaint is quite replete in its statements, assertions and conclusions, and exhibits the alleged trust agreement as a part of the complaint. In the complaint proper, it is in substance alleged:

That on November 10, 1938, the defendant entered into a written trust indenture as trustee with Commercial Invesment Corporation, and that thereafter defendant acted as trustee until October 28, 1940, on which day one Nathan Grant, of Davenport, Iowa, was appointed receiver "of all of the property and assets of said Commercial Investment Corporation by an order in the District Court of the State of Iowa in and for Scott County, and thereupon defendant, without contesting the order, although obligated as trustee so to do, turned over and delivered to said receiver all of the collateral security that defendant was holding as trustee under said trust indenture pursuant to said order entered by said court." The defendant will be hereafter referred to as "trustee", and the Commercial Investment Corporation as "the corporation".

Plaintiffs further allege that Items 1, 2 and 3 of the trust indenture provided for

Grimm, Elliott, Shuttleworth & Ingersoll, of Cedar Rapids, Iowa, and Spieth, Taggart, Spring & Annat, of Cleveland, Ohio (H. K. Bell, of Cleveland, Ohio, of counsel), for plaintiffs.

the issuance by the corporation of collateral trust notes to be registered and certified by the trustee, and that at the time of the appointment of the receiver for the corporation there were outstanding such notes in the amount of $235,100, which had been certified and registered by the trustee, all of which had been certified and registered within approximately nine months prior to October 28, 1940, all of which matured within nine months after said date. That plaintiffs hold of such notes an aggregate of $58,100. That there are other notes outstanding aggregating $177,000. That plaintiffs, together with other holders of such notes, are acting under a written agreement authorizing the institution of this action.

Plaintiffs further allege that Items 4 and 10 of the trust indenture provided that the corporation would keep on deposit with the trustee the types of securities set forth in Items 5 to 9 inclusive, and that for each $100 principal, the corporation would maintain on deposit with the trustee collateral of the type described in Items 5, 6 and 7, amounting to $120, or collateral of the type specified in Items 8 and 9, amounting at par to $100, or collateral consisting in part of one and part of another of the above types. That no specific collateral was to secure any particular note, but that all collateral was to be security for all notes outstanding.

Plaintiffs allege that trustee accepted from the corporation collateral not of the types specified in Items 5, 6, 7. 8 and 9, and as a result for a long time prior to October 28, 1940, failed to have on hand sufficient collateral security of such types to meet the percentage requirements stated, and notwithstanding the trustee continued to certify and register collateral notes, although it "knew or should have known" that sufficient collateral was not held by it.

Plaintiffs allege that Item 11 of the trust indenture provided that if the principal or any installment of principal of any collateral remained unpaid sixty days after the first day of the month in which it matured, the corporation should cease to be entitled to credit for the amount so unpaid, and that if the same remained unpaid ninety days after maturity, or any two installments for sixty days, the corporation should deliver forthwith to the trustee other collateral of the required type of an equal face value.

Plaintiffs further allege that notwithstanding its duty as trustee under said trust indenture, defendant continued to give the corporation credit for collateral on which principal had been unpaid for sixty and ninety days after maturity.

Plaintiffs cite Item .12 of the trust indenture as providing that the trustee might in its discretion reject or require the corporation to withdraw any collateral offered for deposit or deposited, and might refuse to authenticate any collateral notes delivered to it. And again say that "notwithstanding its duty as trustee," defendant accepted from the corporation collateral offered for deposit, and continued to hold deposited collateral, although such collateral was not proper, and was of little value, although certified by the corporation to be regularly issued valid collateral. That defendant failed to make investigation to determine the value and worth of the collateral, and the worth, value and existence of the liens and property securing the same. That the trustee continued to certify and register notes without making investigation to determine the worth and value of collateral.

Plaintiffs allege that the trust indenture provided that the corporation, when not in default, could collect payments of interest and principal on securities deposited with the trustee, and could withdraw securities or cash without substitution therefor, provided the amount of securities and cash on deposit would not be reduced below the minimum specified in Item 10.

Plaintiffs further say that "notwithstanding its duty as trustee", defendant permitted the corporation to collect principal and interest on collateral and withdraw collateral, although the corporation was in default.

Plaintiffs, in paragraph 17 of the complaint, point out that the trust indenture provided the limit of indebtedness by the corporation, which not counting real estate mortgage loans, should not exceed three times the amount of the unimpaired capital surplus and undivided profits; and in paragraph 18 allege that the trustee certified and registered collateral notes, although the borrowings and total indebtedness of the corporation greatly exceeded three times the unimpaired capital, surplus and undivided profits. That the trustee made no investigation whatever during the entire period it acted as such to determine either the total borrowings and indebtedness of the corporation or the amount of its unimpaired capital, surplus and undivided profits, although a reasonable investigation would have revealed that the unimpaired

capital, surplus and undivided profits were insufficient. Plaintiffs point out that the trust indenture provided that so long as said notes were outstanding the corporation would not redeem, retire or purchase any of its own capital stock unless not in default under the trust indenture, and unless it continued to maintain the ratio of capital, etc., provided in Item 18.

In paragraph 20, plaintiffs allege that the corporation did redeem, retire and purchase its own capital when in default as aforesaid, and failed to maintain the ratio of capital, surplus and undivided profits provided in Item 18; and that the trustee failed to take any action to prevent such redemption, retirement and purchase by the corporation of its own capital stock. That the trustee "knew, or should have known" that the corporation was in default and had failed to maintain said ratio of capital, etc., as provided in Item 18.

Plaintiffs allege that Item 21 of the trust indenture provided that if the corporation failed to keep on deposit with the trustee the amount and kind of securities aforesaid, or fully comply with the terms of the trust, the trustee had the right as such to collect, sell and enforce any and all of the securities securing all of the notes outstanding in the manner provided in said Item 21, and to pay pro rata the net proceeds to the holders of the trust notes. That notwithstanding the provisions of Item 21, the trustee failed to collect, sell or enforce the collateral securities and pay pro rata to the holders of the notes, and continued to permit the corporation to continue to collect, sell and enforce the same, although the trustee "knew, or should have known," that the corporation failed to keep on deposit the amount and kind of securities aforesaid, or to fully comply with the terms of the trust, and thereby permitted the trust property to be wasted and depreciated.

Plaintiffs further allege that the trust indenture provided that the corporation should keep on file a complete list of all securities held by the trustee, and keep accurate records of all collections of principal and make full reports thereof to the trustee at least twice a month. That Item 24 of the trust indenture provided that the corporation would furnish the trustee with an annual audit by certified public accountants, and would give the trustee accessibility to the books and records of the corporation in relation to said trust, and furnish other in-

formation. That notwithstanding this the trustee failed to make investigation and reports of the books of the corporation, or to check and verify the collateral security deposited, and failed to procure from the corporation such audits although the same would have revealed the insufficiency of the collateral security, that the same was being wasted and depreciated, and that the corporation was in default.

Plaintiffs further allege that following acceptance of the trust by the trustee, the corporation instituted a scheme to defraud the holders of the trust notes by depositing with the trustee false and fraudulent collateral security, by collecting and retaining moneys arising from collateral securities, by making false and fraudulent reports to the trustee, and by other false and fraudulent means and methods, so that at all times during the issuance, certification and registration of notes totaling $235,100, which were outstanding October 28, 1940, the corporation had committed numerous defaults and the collateral security became greatly wasted and depreciated in value.

That plaintiffs further say that notwithstanding its duty, the trustee failed to make reasonable investigation, check or verify the collateral security, or to make any determination of the capital, surplus and undivided profits of the corporation, and failed to procure any audits.

Plaintiffs further allege that the trustee knew that said collateral notes were being sold by the corporation to the public, including the plaintiffs and all holders to the extent aforesaid, and that the purchasers were relying upon said trust indenture and upon the trustee properly performing its duties, and upon the representations made by the trustee and the corporation that the collateral securing the notes consisted wholly of up-to-date wholesale and retail automobile contracts. Plaintiffs further say that although defendant "knew, or should have known" that the corporation was in default, nevertheless, the trustee continued to certify and register said notes to the extent aforesaid, and failed to take reasonable and diligent action as trustee, to reasonably protect the interests of the holders of said notes, and permitted the collateral security to become wasted, dissipated and depreciated. That the collateral security delivered by the trustee to Nathan Grant as receiver, was not of the types specified in Items 5 to 9 inclusive, of the trust inden-

ture, and was so depreciated that it was not worth to exceed $30,000, as defendant "knew, or should have known".

Plaintiffs further allege that by reason of the trustee's failure to reasonably perform its duties "as set forth in this complaint", the holders of trust notes will realize from the collateral security held by the trustee and turned over by it to said receiver, from the corporation and its receiver, not to exceed $30,000, and that the holders and owners of such collateral notes will suffer a loss of at least $205,100 plus interest. Plaintiffs then pray as hereinbefore stated, and for general equitable relief.

■ Careful analysis of the trust agreement leads me to conclude that numerous assertions, conclusions and assumptions set forth in the complaint proper, do not find support in the trust agreement, and that the trust agreement when properly construed makes the trustee little more than a mere depository for the collaterals and a registrar of the notes issued. As heretofore stated, the trust agreement specifies the form of the notes to be issued, and the notes issued, registered and delivered by clearly stated recital, makes the entire trust agreement a part of each note. By recital each note states the character of the security held by the trustee. The form of the various undertakings by the corporation in the trust agreement are set forth in promissory language, as for instance, "the corporation agrees", or "the corporation covenants". Now, inasmuch as these agreements and covenants are in the notes themselves over the signature and seal of the corporation, it seems to me that they run primarily to the holders of the notes, and not to the trustee.

There is another provision of the trust agreement that is quite important to have in mind in construing the agreement, and which plaintiffs omit any reference to in the complaint proper. I refer to paragraph 13 of the trust indenture, which is in the following language: "The Trustee shall be under no obligation to examine into or determine the validity of any such collateral deposited with it under this Indenture, or whether such collateral was acquired by the Corporation in the usual course of its business, and shall be authorized to act upon certificates of the Corporation reciting that the collateral is regularly issued valid collateral and that the liens are valid."

Plaintiffs complain of numerous derelictions upon the part of the trustee, but they may all be reduced to one or two classes. They complain that the trustee did not investigate and discover the frauds and derelictions of the corporation, and did not compel the corporation to live up to its covenants in the collateral notes. They further complain that the trustee did not contest the order of the District Court of Iowa for Scott County, or liquidate the trust under Item 21 of the trust agreement itself.

Plaintiffs attempt to hold the trustee responsible upon its repeated conjectural allegations that the trustee "knew or should have known" of the frauds being perpetrated by the corporation upon the holders of the collateral notes and upon itself as trustee.

■ I do not find in the trust indenture any mandate requiring the trustee to make investigation, search records, or institute proceedings to compel performance by the corporation of the promissory provisions included in the notes. It must be remembered that everything within the four corners of the trust agreement is a part of each note, including the trustee's absolvency from making any investigations and authorizing it to act upon the mere word of the corporation. The holders of these notes must have known all about the requirements of the trust agreement. I will not assume that competent bankers would invest thousands of dollars in a contract which they had never read. It must be remembered that there is no definite or positive allegation in the complaint of knowledge on the part of the trustee of these defaults or frauds being perpetrated by the corporation, and it is not pointed out where, when or how the trustee acquired information sufficient to put it on notice of these things prior to the appointment of the receiver.

■ Plaintiffs stress the complaint that the trustee did not contest the order of the District Court of Scott County, and liquidate the securities itself under Item 21 of the trust agreement. It seems to me, however, that the trustee had no ground upon which to contest the order of a court of equity of competent jurisdiction, and that the time for its liquidation under Item 21 had passed. It will be remembered that the trustee's power to liquidate was "only after the trustee had made not less than fifteen days demand, in writing, of the

Corporation for any default." Now when the District Court of Scott County ordered the surrender of the securities to the receiver, the corporation was functus officio, at least for the duration of the receivership. No legal demand for performance could be made upon a corporation so situated, for its power to perform had been suspended. No other power is provided in the trust agreement for liquidation by the trustee than is found in Item 21. All other implications looking to liquidation must be read pari materia with Item 21, and would be subject to the limitations of that item.

Plaintiffs pray for an accounting by the trustee for the securities it held, but is seems to me that the trustee accounted when it turned over all of the securities that had been delivered to it by the corporation, to the receiver of a court of equity of competent jurisdiction. At least plaintiffs do not question the equity of the liquidation, of the collateral by the State Court of equity of Scott County. There is no claim that all collateral that was in the hands of the trustee and delivered to the receiver was not fairly and equitably liquidated, and that they have not received therefrom all that they could reasonably expect. It, therefore, appears that there is no longer in existence any res upon which equity can impress any equitable right or estate. Plaintiffs also pray for a money judgment of large proportions. I think the granting of that relief is not the function of a class suit in equity, and that in this case when the res was liquidated and there was no longer any equitable right or estate existing, the propriety for a class suit had ended. As I have stated, there was no longer any equitable right or estate, and no legal right that could be remedied by the invocation or application of any equitable remedy. There was simply no remedy left for the plaintiffs under the allegations of the complaint except a suit at common law for their damage, and the Constitution of the United States guarantees the parties a jury trial in such case.

I conclude that defendant's motion must be sustained, but that any of the plaintiffs may be permitted to file an amended complaint definitely alleging knowledge, or the particular facts from which knowledge may be inferred, on the part of the trustee of the fraudulent scheme of the corporation alleged, and that after it had acquired such knowledge, it continued to register and certify notes, and that the plaintiff so amending is a holder of one or more of such notes, and has been damaged by reason of the fraud of the corporation, including the trustee so acting with knowledge. Clearly such amended complaint would sound in tort, for the trustee, acting with knowledge of the fraudulent scheme on the part of the corporation, would become particeps criminis. In such case either party would be entitled to a jury trial. A reasonable number of the plaintiffs, however, might join in the same action under Rule 20 of the Rules of Civil Procedure, 28 U.S.C. A. following section 723c, providing for permissive joinder.

It is ordered that the defendants' motion to dismiss be sustained and the plaintiffs' complaint dismissed, with leave, however, to the respective plaintiffs within thirty days from this day to apply for vacation of this Order and reinstatement and leave to file an amended complaint in conformity with said opinion, a copy of such proposed amended complaint to be exhibited on their application.